No. 02-133

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 101

LINDA NIELSEN,

      Plaintiff and Appellant,

   v.

BROCKSMITH LAND & LIVESTOCK, INC.,
A Montana Corporation; MARGARET BROCKSMITH and
CHARLES H. BROCKSMITH, husband and wife, and as
officers of Brocksmith Land & Livestock, Inc.,

      Defendants and Respondents.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
                  In and for the County of Valley, Cause No. DV-01-23,
                  The Honorable John C. McKeon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Laura Christoffersen, Matthew W. Knierim, Knierim, Fewer &
           Christoffersen, P.C., Culbertson, Montana

      For Respondents:

           Fred C. Rathert, Crowley, Haughey, Hanson, Toole & Dietrich, PLLP,
           Williston, North Dakota

                     Submitted on Briefs:  October 9, 2003

                             Decided:  April 20, 2004

Filed:

_____

                  Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    This is an appeal from the Seventeenth Judicial District Court, Valley County. Brocksmith Land & Livestock, Inc., Margaret and Charles Brocksmith as husband and wife and as officers of Brocksmith Land & Livestock, Inc. (Brocksmiths) moved to dismiss this action in the District Court arguing that the court had no jurisdiction to consider the matter or, in the alternative, should abstain from exercising jurisdiction.  The District Court conditionally granted the motion due to a pending matter in front of the Fort Peck Tribal Court.  It is from this Order that Linda Nielsen (Nielsen) appeals.  We affirm.

¶2    The issue on appeal is whether the District Court properly abstained, as a matter of comity, from assuming jurisdiction of the action when the Fort Peck Tribal Court had previously asserted jurisdiction over the subject matter of the dispute between the parties.

BACKGROUND

¶3    Nielsen and Charles Brocksmith are enrolled members of the Assiniboine and Sioux Tribes, Fort Peck Indian Reservation.  Nielsen resides on the Fort Peck Indian Reservation. Charles Brocksmith owns one hundred percent of the voting stock of Brocksmith Land & Livestock, Inc.  Margaret Brocksmith, a non-Indian and Charles' wife, was, at all relevant times,  the lawful attorney in fact for Charles by virtue of a power of attorney given to her on March 23, 1995.  Charles and Margaret resided in Glasgow, Montana, not on the Fort Peck Indian Reservation, at the time of the dispute.

¶4    On February 18, 2000, Nielsen and the Brocksmiths entered into three buy-sell agreements conveying trust land within the exterior boundaries of the Fort Peck Indian

2

Reservation and certain other fee patent land, the majority of which was within the exterior boundaries of the Reservation. The agreements also covered certain livestock, machinery, equipment, Bureau of Land Management grazing leases, water rights and other property associated with the above described real estate. Margaret signed the agreements in her capacity as Charles' lawful attorney in fact and as secretary of Brocksmith Land & Livestock, Inc.

¶5 On October 24, 2000, the Brocksmiths filed a complaint against Nielsen in the Fort Peck Tribal Court seeking damages for failure to timely close the purchase of real and personal property described in the buy-sell agreements. Nielsen objected to subject matter and personal jurisdiction, and the Tribal Court denied such objections on July 31, 2001, thereby stating that the court did, in fact, have jurisdiction over the subject matter and the parties in the litigation. The Tribal Court based its conclusions on the fact that: (1) the dispute between the parties was one between Native Americans and enrolled members of the Assiniboine and Sioux Tribes, Fort Peck Indian Reservation; (2) the court had jurisdiction over any action where one party to the action is an Indian or a corporation owned in whole or substantial part by an Indian and where the Indian party resides on the reservation; (3) there was no evidence that Margaret had ownership in any property subject to the sale, concluding that she was a nominal party only by reason of marriage to Charles and her status as attorney in fact; and (4) the court had jurisdiction to interpret and enforce the agreements as contracts made between members of Assiniboine and Sioux Tribes. Nielsen appealed the jurisdictional finding to the Fort Peck Tribal Appellate Court.

3

¶6   On June 28, 2001, while the matter was still pending in the tribal court system, Nielsen filed this suit in the Seventeenth Judicial District Court, Valley County, Montana, alleging various claims based upon or arising out of alleged buy-sell agreements between her and the Brocksmiths.  On August 6, 2001, the Brocksmiths filed a Motion to Dismiss with the District Court on the grounds that the court either lacked jurisdiction or must abstain from exercising jurisdiction.  On January 22, 2002, the District Court conditionally granted the Motion to Dismiss and it is from this Order that Nielsen appeals.

## STANDARD OF REVIEW

¶7   This Court reviews a district court's conclusion of law to determine whether the court's interpretation of the law is correct.  *Bradley v. Crow Tribe of Indians*, 2003 MT 82, ¶ 11, 315 Mont. 75, ¶ 11, 67 P.3d 306, ¶ 11.  Here, the District Court declined to exercise jurisdiction under the doctrine of abstention over Nielsen's claim due to the fact that such claims were based upon the same sales agreements which were the subject matter of previous litigation still pending before the Fort Peck Tribal Court.  On May 21, 2002, the Fort Peck Tribal Appellate Court considered the jurisdictional findings of the Fort Peck Tribal Court and affirmed the Tribal Court's determination of jurisdiction.  Therefore, we review the District Court's conclusion of law to determine whether it properly interpreted the law governing state/tribal civil jurisdiction.  *Agri West v. Koyama Farms, Inc.* (1997), 281 Mont. 167, 171, 933 P.2d 808, 810.

## DISCUSSION

¶8   Whether the District Court properly abstained, as a matter of comity, from retaining

4

jurisdiction of the action when the Fort Peck Tribal Court had previously asserted jurisdiction over the subject matter of the dispute between the parties.

¶9      The Seventeenth Judicial District Court granted the Brocksmith's Motion to Dismiss and based its determination on the similarities between the case at hand and *Agri West*. We said in *Agri West*, that:

> [W]hen a tribal court asserts jurisdiction over certain causes of action, we defer to that assertion by applying the doctrine of abstention as a matter of comity. If the parties contest the tribal court's assertion of jurisdiction, then it is appropriate that they raise and litigate that issue in the tribal court. A court has the judicial power to rule on the question of its own jurisdiction. (Citation omitted.)  We conclude that, in the case at bar, the Crow Tribal Court explicitly asserted jurisdiction over this action . . . . Therefore, . . . abstention as a matter of comity is proper under the procedural history of this case.

*Agri West*, 281 Mont. at 174, 933 P.2d at 812 (citations omitted).  The court determined that Nielsen's allegations, even when considered as true, were all based upon or arose out of the same sales agreements which were the subject matter of previous litigation still pending in the Fort Peck Tribal Court, and Nielsen was still litigating the jurisdictional findings of that court in front of the Fort Peck Tribal Appellate Court.  Therefore, it abstained from exercising jurisdiction, however, it tolled the applicable statute of limitations during the appeal of the Fort Peck Tribal Court jurisdictional determination, thus, dismissing without prejudice.

¶10     Nielsen presents three arguments to support her position that Montana state courts have jurisdiction over this specific matter.  As a preliminary matter, she declares that this Court has long since recognized that the Montana state court system is open to all of its citizens, including its Indian citizens.  Next, she sets forth a variety of arguments in support

5

of her position that state courts rather than tribal courts, are the proper tribunals to consider monetary damage claims against non-Indians, non-resident Indians and Montana corporations. She disagrees with the District Court's findings that her claims against Margaret in the District Court are substantially similar to those pending in the Fort Peck Tribal Court. As such, relying upon *Nevada v. Hicks* (2001), 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398, she argues the District Court, not the Tribal Court, had jurisdiction over her claims against Margaret, a non-Indian living off the reservation.

¶11 Finally, Nielsen argues that the District Court erred when it abstained from exercising jurisdiction. She maintains that abstention is only proper when the tribal court has jurisdiction over the claims and she cites to *Chiwewe v. Burlington N. & Santa Fe Ry. Co.* (D.N.M. 2002), 239 F.Supp.2d 1213, where the court expounded on exceptions to this rule. She asserts that abstention simply does not apply in this case.

¶12 The Brocksmiths maintain that tribes retain powers of self-government over reservation activities. They point out that the purchase agreements involved members of the Assiniboine and Sioux Tribes, with the exception of Margaret who was involved in the transactions solely as a nominal party, representing Charles Brocksmith, with no real interest. Thus, all the interested parties were Indians and a Montana corporation in which all of the voting stock was held by an Indian. Further, the majority of the real and personal property was located within the exterior boundaries of the Fort Peck Indian Reservation. Thus, they claim that the Tribal Court correctly determined that it had personal and subject matter jurisdiction over this matter. The Brocksmiths rebut Nielsen's assertion that the District

6

Court, not the Tribal Court, had jurisdiction over her claims against Margaret, a non-Indian living off the reservation, by concurring with the District Court's finding that the claims asserted in state court clearly arise out of the same transaction or occurrence as the Tribal Court claims.

¶13    To support their argument that abstention was proper, the Brocksmiths assert that according to *Iron Bear v. District Court* (1973), 162 Mont. 335, 512 P.2d 1292, when a tribal court has already asserted jurisdiction over Indian parties concerning matters which arise and pertain to property located within the exterior boundaries of the Fort Peck Indian Reservation, the Tribal Court has already assumed jurisdiction over the matter and has therefore preempted state law.  In light of the Tribal Court's assertion of jurisdiction over the same causes of action, agreeing to resolve this instant dispute among its members, the state court's exercise of jurisdiction in this case would infringe upon the Fort Peck Tribe's right to govern itself.  The Brocksmiths respectfully submit that the Montana state court system should not interfere with the Tribal Court's rights to decide this dispute, and we agree.

¶14    This Court has long held that the courts of this state are open to all Montana citizens, including our Indian citizens.  *Bad Horse v. Bad Horse* (1974), 163 Mont. 445, 450, 517 P.2d 893, 895.  As such, Native Americans may sue in state court so long as Congress has not expressly retained jurisdiction in the United States, particularly if the Native American is a Montana citizen and the matter does not interfere with self-government.  *Bad Horse*, 163 Mont. at 450, 517 P.2d at 895.  Conversely, we have also routinely "recognized and upheld the sovereignty of Indian tribes to maintain their rights of self-government and to control the

internal relations of their members." *In re Marriage of Skillen*, 1998 MT 43, ¶ 41, 287 Mont. 399, ¶ 41, 956 P.2d 1, ¶ 41. Tribal courts have jurisdiction over tribal members conducting business on tribal land with other tribal members. *See, e.g., National Farmers Union Ins. Cos. v. Crow Tribe of Indians* (1985), 471 U.S. 845, 855-56, 105 S.Ct. 2447, 2453-54, 85 L.Ed.2d 818; *Kennerly v. District Court of Ninth Judicial Dist.* (1971), 400 U.S. 423, 429-30, 91 S.Ct. 480, 483, 27 L.Ed.2d 507.

¶15 This Court has applied the doctrine of abstention and deferred to tribal court opinions on the basis of comity numerous times. *See Agri West*, 281 Mont. at 174, 933 P.2d at 812 ("when a tribal court asserts jurisdiction over certain causes of action, we defer to that assertion by applying the doctrine of abstention as a matter of comity."); *In re Marriage of Limpy* (1981), 195 Mont. 314, 318-19, 636 P.2d 266, 269 ("[w]e defer to [the tribal court's] opinion on the basis of comity believing that the Tribal Court should interpret Tribal law as a matter of policy . . . ."); *Stewart v. District Court* (1980), 187 Mont. 209, 212, 609 P.2d 290, 292 ("under the principles of comity we should abstain and leave to the Tribal Court the decisional task of divorce matters between tribal members.").

¶16 We are particularly mindful that in *Agri West* and *Stewart*, the tribal courts had already asserted jurisdiction over the action prior to the action being filed in the state courts. In *Limpy*, we abstained despite the fact that the tribal court had not yet exercised jurisdiction over the specific case on appeal, because the tribal court had exercised jurisdiction in similar cases which indicated "a disposition to preempt State jurisdiction." *Limpy*, 195 Mont. at 319, 636 P.2d at 269. Therefore, in those cases, this Court applied the doctrine of abstention

to "reduce the 'inter-governmental friction' likening the 'competing interests' of the State and the tribes to a 'Pullman type abstention situation.'" *Agri West*, 281 Mont. at 173, 933 P.2d at 812 (quoting *Stewart*, 187 Mont. at 212, 609 P.2d at 292).

¶17 The procedural history of this case parallels that of *Agri West*, *Limpy* and *Stewart*. Here, the Fort Peck Tribal Court has exercised jurisdiction over this matter as evidenced by its jurisdictional determination dated July 31, 2001. In its January 22, 2002, Order, the District Court found that after a close observation of Nielsen's claims, such claims were all based upon or arose out of the same sales agreements that were the subject matter of the litigation pending in the Fort Peck Tribal Court. Nielsen and Charles Brocksmith are both Native Americans, one of whom resides on the reservation. The real and personal property can be found almost entirely within the confines of the exterior of the Fort Peck Indian Reservation. The District Court found that Nielsen's claims against Margaret basically arose out of the same transaction or occurrence being litigated in the Tribal Court. Thus, we conclude that, in the case at bar, the Fort Peck Tribal Court explicitly asserted jurisdiction over this action through its Order Determining Jurisdiction.

¶18 We said in *Agri West* that a court has the judicial power to rule on the question of its own jurisdiction, and it is more appropriate to contest the tribal court's assertion of jurisdiction within the tribal court as opposed to the state court system. *See Agri West*, 218 Mont. at 174, 933 P.2d at 812. Nielsen appealed the jurisdictional issues within the Fort Peck Tribal Court, and the Fort Peck Tribal Appellate Court affirmed the Tribal Court's determination. Therefore, as in *Agri West*, *Limpy* and *Stewart*, abstention as a matter of

9

comity is proper under the procedural history of this case.

¶19    Consequently, we hold that the District Court did not err by exercising the doctrine of abstention and granting the Brocksmiths' Motion to Dismiss when the Fort Peck Tribal Court had previously assumed jurisdiction over the parties and the subject matter of the dispute between Nielsen and Brocksmith.  Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JIM RICE